*JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Shamrock Foods Company

## DEFENDANTS

Jeffrey Gast and Sysco Food Services of Arizona, Inc.

**(b)** County of Residence of First Listed Plaintiff   Phoenix
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Epstein Becker & Green, P.C., 1227 25th Street, N.W., Suite 700, Washington, D.C. 20037-1156 (Phone 202-861-0900)

Attorneys (If Known)

Raymond Deeny, Esq., Sherman & Howard, LLC, 90 South Cascade Avenue, Suite 1500, Colorado Springs, CO 80903

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sec. 1331

Brief description of cause:
TRO & Preliminary Injunction for violation of Computer Fraud & Abuse Act, 18 U.S.C. sec. 1030(g)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  2/3/08

SIGNATURE OF ATTORNEY OF RECORD  *Kara M. Maciel*

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

1   Martin Clare, Bar # 010812
    CAMPBELL, YOST, CLARE & NORELL
2   101 North First Avenue, Suite 2500
    Phoenix, Arizona  85003
3   Telephone:  602/322-1600
    Telecopier:  602/252-4431
4
    Local Counsel for Plaintiff
5
6   Kara M. Maciel (PHV pending)
    Mark M. Trapp (PHV pending)
7   EPSTEIN BECKER & GREEN, P.C.
    1227 25th Street, N.W.
8   Suite 700
9   Washington, D.C. 20037
    (202) 861-0900 (tel)
10  (202) 296-2882 (fax)
11
    Lead Counsel for Plaintiff
12

13              **UNITED STATES DISTRICT COURT**

14                  **DISTRICT OF ARIZONA**

15

16  SHAMROCK FOODS COMPANY,          CASE NO.

17              Plaintiff,

18       v.

19  JEFF GAST, an Arizona resident, AND
20  SYSCO FOOD SERVICES OF           **VERIFIED COMPLAINT AND**
    ARIZONA, INC., an Arizona        **DEMAND FOR JURY TRIAL**
21  corporation,

22              Defendants.

23

24       Plaintiff, Shamrock Foods Company ("Shamrock"), submits the following

25  Verified Complaint and states:

26                  NATURE OF THE CASE

27
28       1.    This is an action for injunctive relief, monetary damages and other

remedies arising out of the wrongful acts of Jeff Gast ("Gast") and Sysco Food Services of Arizona, Inc. ("Sysco").  Gast is the former Regional Sales Manager of the Southern Region of Arizona for Shamrock and now works for Sysco.

2.     Sysco and Gast misappropriated Shamrock's trade secrets, confidential and proprietary information, converted Shamrock's property, tortiously interfered with Shamrock's contractual relationships, violated the Computer Fraud and Abuse Act and through these and other improper actions caused substantial and irreparable harm to Shamrock.  On information and belief, the actions taken by Gast, on his own behalf and as an agent of Sysco, include  the following:

- Gast accessed Shamrock's secure computer network and electronically transmitted to his own personal e-mail account Shamrock confidential and proprietary data in days immediately preceding his abrupt and voluntary resignation from Shamrock.

- After he left Shamrock's employ and while employed by Sysco, Gast accessed, used and disclosed Shamrock's confidential and proprietary data to gain an unfair competitive advantage over Shamrock.

- Gast disclosed the confidential and proprietary information to Sysco, a direct competitor of Shamrock's, as well as to customers and potential customers of Shamrock, all to Shamrock's detriment.

- Gast, while an employee of Shamrock and immediately following his resignation, solicited associates at Shamrock to join him and work at Sysco.

The actions taken by Sysco directly include, upon information and belief, encouraging Gast to breach his Confidentiality Agreement with Shamrock while he was still a Shamrock employee, to assist Sysco in obtaining and enticing Shamrock's customers and potential customers away from Shamrock and to utilize the confidential and proprietary information wrongfully accessed and retained by Gast to tortiously interfere with Shamrock's customers and prospective customers.

<u>PARTIES AND JURISDICTION</u>

3.    Shamrock is an Arizona corporation with its principal place of business in Phoenix, Arizona.

4.    On information and belief, Sysco is an Arizona corporation with its principal place of business in Tolleson, Arizona.

5.    On information and belief, Gast is an individual who resides in Glendale, Arizona. The acts that gave rise to this action were taken by Gast, on his own behalf and as an agent of Sysco, in Phoenix and Glendale, Arizona.

6.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367(a) because this Verified Complaint presents a federal question.

7.    Venue is appropriate under 28 U.S.C. § 1391(b).

## FACTS

8.    Shamrock is a family owned food distribution business which provides food, produce, foodservice equipment and supplies to its customers throughout Arizona and the surrounding states.

9.    Shamrock has many customers throughout Arizona and the Southwest.

10.    Shamrock's competitive success depends on a number of different kinds of confidential information with respect to its products and customers including rates, customer lists, and pricing and marketing strategies.  Shamrock expends and has expended a significant amount of effort and resources to develop and maintain the confidentiality of these different types of information.

11.    Shamrock's proposals to customers, its customer lists, sales histories, pricing, proposal matrixes, and bonus and commission rates are highly confidential and proprietary.  Shamrock does not disclose publicly its customer lists, commission and bonus rates, pricing or marketing strategies, or any of the confidential information contained therein.

12.    Access to Shamrock's customer lists, histories, commission and bonus rates, and pricing and marketing strategies is limited to top management and other employees on a "need to know" basis.

13.    Shamrock's rates, customer lists, pricing and marketing strategies,

sales histories, bonus and commission rates and other confidential and proprietary information are kept on a secure server on its computer system. Access to Shamrock's confidential and proprietary information is password protected.

14. The information to which Gast had access by virtue of his position as Regional Sales Manager included company names, contact names, phone numbers, as well as more particularized business information relating to the specific customer's needs, sales and purchase history.

15. Shamrock requires its top sales managers, as a condition of working at Shamrock, to enter into a written Company Confidentiality Agreement that precludes employees from engaging in certain competitive activities with respect to Shamrock, including retaining or disclosing confidential and proprietary information, during their employment and for a period of 24 months after their employment with Shamrock terminates.

16. If Shamrock's proposals, rates, customer lists, histories, commission and bonus rates, and/or pricing and marketing strategies were disclosed to Shamrock's competitors, it would have a severely disabling effect on Shamrock's competitive position. Shamrock's ability to compete fairly for any contracts with any customers and prospective customers would be severely compromised. Instead, Shamrock's competitors would have an unfair competitive advantage over Shamrock by virtue of their unfair and improper access to Shamrock's confidential

and proprietary information, including Shamrock's proposals, rates and strategies.

17.    In addition, Shamrock would be severely hampered in its ability to attract and retain qualified and capable sales representatives and other employees, due to the unfair advantage gained by its competitors.

18.    If Shamrock's confidential and proprietary information were disclosed to its competitors, it would be devastating to Shamrock's business.

### Jeff Gast and Sysco

19.    On or about September 2000, Gast returned to Shamrock as a sales manager.  On December 7, 2004, Gast signed a Confidentiality Agreement ("the Agreement") from Shamrock in which he agreed not to use or disclose "any trade secrets, confidential information, knowledge or data relating or belonging to" Shamrock.  *See* Ex. A ¶ 2, attached hereto.

20.    The Agreement defines Confidential and Proprietary Information as "information, knowledge, or data concerning costs, commission reports or payments, purchasing, profits, markets, sales, discounts, margins, customer histories or preferences, relationships with vendors, organization structures, employees, customers, surveys, customer lists, lists of prospective customers, customer account records, marketing plans or efforts, sales records, training and service materials, Company manuals and policies, computer programs, software and disks, order guides, financial statements and projections, business plans,

budgets, supplier lists, contracts, calendars and/or daytimers that contain customer contact information, compensation schedules, proposals and quotes for business, notes regarding customers and pricing information." *See* Ex. A ¶ 2.

21.   Under the terms of the Agreement, Gast agreed not to contest either the status of the information and materials as Confidential and Proprietary Information or Shamrock's ownership rights in the Confidential and Proprietary Information. *See* Ex. A ¶ 2.

22.   The Agreement also required that upon the cessation of his employment, Gast was to immediately surrender to Shamrock "all computers, telephones, computer software, records and other documents and materials, including but not limited to, any and all business, customer and personnel information or files, daytimers or other calendars containing contact or other information relating to the Company's customers, commission statements containing information relating to the Company's customers, and any and all Confidential and Proprietary Information," and any copies thereof. *See* Ex. A ¶ 3.

23.   The Agreement also prohibited Gast for a period including 24 months after his separation of employment from directly or indirectly recruiting employees of Shamrock, or inducing any employee of Shamrock to terminate his or her employment with Shamrock. *See* Ex. A ¶ 4.

24.    Gast specifically acknowledged in the Agreement that a breach would cause Shamrock "immediate and irreparable harm," and agreed that an injunction would be a permissible remedy.  See Ex. A ¶ 5.

25.    From January 2005 to December 2007, Gast was employed by Shamrock to work full-time as the Regional Sales Manager for the Northern Region of Arizona, with additional responsibility over a portion of the Central Region.

26.    In and around November 2007, Gast requested that he be considered for the position of Regional Sales Manager for the Southern Region of Arizona. Gast and Shamrock began negotiating his relocation to Tucson to become the Regional Sales Manager of Southern Arizona for Shamrock.

27.    On or about November 8, 2007, Gast requested and received another copy of his Agreement from one of Shamrock's District Sales Managers.

28.    Gast and Shamrock agreed on his new position, and on December 20, 2007, Shamrock announced Gast's appointment to Regional Sales Manager of Southern Arizona, effective immediately.

29.    As part of his new position, Shamrock agreed to pay Gast $85,000.00 to help with the selling of his house and his relocation to Tucson, as well as providing an additional loan amount of up to $45,000.00 for other relocation expenses, all provided he actually relocate to Tucson on behalf of Shamrock.

30.     On December 21, 2007, Shamrock provided the $85,000.00 payment to Gast.

31.     Upon information and belief, prior to or around this time, Gast began negotiations with Sysco regarding his coming to work for Sysco.

32.     On or about Friday, January 4, 2008, Gast emailed to his personal e-mail account at jag64@cox.net numerous documents containing Shamrock's confidential and proprietary information.  These documents included, but were not limited to,  the "Top 100 Customer reports," the "label reports," the "per stop" reports, the "Kahuna" reports, the bonus templates, and the proposal and bid matrixes.

33.     The documents Gast emailed to his personal account at jag64@cox.net include, among other things, pricing, sales and volume information, as well as profit margins and gross profits, all of which is highly sensitive, confidential and proprietary to Shamrock, and would be very damaging in the hands of a competitor.

34.     Each of the foregoing documents and reports emailed by Gast to his personal email account at jag64@cox.net is encompassed within the definition in the Agreement of "Confidential and Proprietary Information."

35.     Gast did not have authorization from Shamrock to email these confidential and proprietary documents to his personal email account, and did not

ask for or receive permission to do so.

36.    On or about Monday, January 7, 2008, Gast again emailed to his personal email account at jag64@cox.net additional confidential and proprietary information, including Lost Business Reports, Sales History documents, and Team Statements from the Northern, Central and Southern regions of Arizona, spanning the previous three years from 2004 - 2007.

37.    Each of the foregoing documents and reports emailed by Gast to his personal email account at jag64@cox.net is encompassed within the definition in the Agreement of "Confidential and Proprietary Information."

38.    Gast did not have authorization to email these confidential and proprietary documents from Shamrock to his personal email account, and did not ask for or receive permission to do so.

39.    On or about January 8, 2008, Shamrock loaned Gast the additional $45,000.00 contemplated by the relocation agreement.

40.    On or about January 9, 2008, Gast informed Randy McClanahan, Shamrock's General Sales Manager for Arizona Foods, that he was considering leaving Shamrock.

41.    On or about January 12, 2008, Gast informed Larry Yancy, Shamrock's Senior Vice President, that he was considering going to work for a competitor of Shamrock's.

42.    On or about January 14, 2008, Gast met again with Randy McClanahan, and disclosed that he was going to go to work with Sysco.

43.    Later that day, Gast met with Dan Carroll, Shamrock's General Manager for Arizona Foods, and stated that Sysco had given him "a significantly better offer," and that he was going to accept employment with Sysco.

44.    On or about January 15, 2008, Gast submitted his written resignation from Shamrock.

45.    Gast's last day of employment with Shamrock was January 15, 2008.

46.    On January 15, 2008, after he resigned from Shamrock, Randy McClanahan met Gast and retrieved the laptop computer that Shamrock had made available to Gast for use on behalf of Shamrock, his cell phone and Blackberry, some customer files, and his keys.

47.    Gast represented to McClanahan that this was all the materials, documents and items he had of Shamrock's.

48.    Consistent with the relocation agreement, Gast repaid the $130,000.00 he had received from Shamrock, representing to McClanahan that Sysco had given him the funds to cover the payment to Shamrock.

49.    After Gast left Shamrock's employ on January 15, 2008, Shamrock retained a computer forensic company, Alvarez and Marsal ("A&M") of Dallas, Texas, to perform a forensic analysis of Gast's laptop at a cost exceeding

$5,000.00.

50.     Upon information and belief, Gast accessed and printed confidential and proprietary data of Shamrock in anticipation of going to work for Sysco and after he left Shamrock's employ.  Upon information and belief, Gast's actions were in furtherance of his intention to begin employment with Sysco and in furtherance of Sysco's interests, and at the expense of Shamrock's interests.  Upon information and belief, at the time Sysco was communicating with Gast and inducing him to assist Sysco in winning customers away from Shamrock and in obtaining a competitive advantage over Shamrock, Gast was Shamrock's Regional Sales Manager, and was being paid a substantial salary by Shamrock.

51.     Upon information and belief, while he was accessing and copying Shamrock's confidential and proprietary data without Shamrock's consent, Gast was at all times acting as an employee or agent of Sysco.

52.     Upon information and belief, in his position and on behalf of Sysco, Gast has utilized the wrongfully retained Confidential and Proprietary Information of Shamrock, as well as disclosed it to Sysco and/or its employees and agents for use in gaining a competitive advantage over Shamrock.  Among other things, Gast provided to Sysco information about Shamrock's rates, customer lists, sales histories, commission data, profit margins and pricing strategies.

53.    Upon information and belief, Gast and/or Sysco has shared the Confidential and Proprietary Information with current and potential customers of Shamrock, all to Shamrock's detriment.

54.    Upon information and belief, the fact that Sysco was soliciting confidential and proprietary information and Shamrock's rates and pricing strategy from Gast while he was employed by Shamrock was known by Sysco's management.

55.    Upon information and belief, on or about January 18, 2008, Gast began employment with Sysco.

56.    Upon information and belief, in violation of the Agreement, during and after his employment at Shamrock, Gast has contacted Shamrock employees for the purposes of recruiting them to come to work for Sysco.

57.    Upon information and belief, in violation of the Agreement, Gast recruited Shamrock employee Tim Teague to work for Sysco.  Teague resigned from Shamrock on or about January 16, 2008, and on information and belief, Teague began working for Sysco as a sales representative shortly thereafter.

58.    The exact scope and extent of Sysco's and Gast's unauthorized access to Shamrock's trade secrets and confidential and proprietary information is not presently known.  However, upon information and belief, Sysco and Gast gained improper access to and have copied, used and/or retained over 110 different trade

secrets and confidential and proprietary documents, including:   Top 100 Customers Reports by gross profit and sales dollars, Monthly Shamrock Label Commission Sales, the Southern Region Gross Profit Per Stop Reports, Proposal and Bid Matrixes, Lost Business Reports, Sales History Reports from 2004 - 2007, and Team Statements from 2004-2007.

59.   Sysco's and Gast's unauthorized and improper access to Shamrock's trade secrets and other confidential and proprietary information continues and is ongoing.

60.   On January 23, 2008, counsel for Shamrock notified Gast and Sysco that Shamrock's belief that Gast was in violation of the Agreement, and that Sysco had allowed and encouraged Gast to violate the Agreement.  Counsel for Shamrock demanded that all wrongful activities cease immediately and requested immediate written detail of all wrongful activity to date and assurances that it will not continue.

61.   On January 25, 2008, counsel for Sysco and Gast denied any violation of the Agreement, but failed to provide the requested detail or assurances of compliance with the Agreement.

62.   On February 1, 2008, counsel for Shamrock sent another letter to Sysco and Gast's counsel and again delineated additional evidence Shamrock had uncovered of Gast and Sysco's wrongful actions and violations of the Agreement.

At that time, counsel for Shamrock notified Gast and Sysco of its intent to pursue a legal action to protect its rights.

COUNT ONE

*(Against Gast for Breach of Duty of Loyalty)*

63.     Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 62 as if fully set forth herein.

64.     By virtue of his employment with Shamrock, and under the Agreement, Gast owed Shamrock a fiduciary duty of loyalty.

65.     By his actions averred above including, but not limited to, his improper access and electronic transmission of over 110 confidential and proprietary information from Shamrock's secure computer network to his personal e-mail account with the intent to use the information to his personal benefit and Sysco's competitive advantage, Gast breached his duty of loyalty to Shamrock.

66.     In addition, by directly or indirectly recruiting Shamrock employees to leave Shamrock's employment and work at Sysco, Gast breached his duty of loyalty to Shamrock.

67.     As a direct and proximate result of Gast's actions, Shamrock has suffered and continues to suffer substantial and irreparable damages, including lost profits, loss of goodwill, and considerable expense for various management employees, outside counsel and forensic consultants in pursuing its legal rights in

this action.   In addition, as a result of Gast's breach, Shamrock lost a valuable employee and suffered monetary damages and costs in replacing such employee and could lose opportunities to compete fairly for other business.

COUNT TWO

*(Against Sysco and Gast for Misappropriation of Trade Secrets)*

68.   Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 67 as if fully set forth herein.

69.   By their actions described above, Sysco and Gast have misappropriated information belonging to Shamrock that constitutes trade secrets both under the common law and within the meaning of Ariz. Rev. Stat. § 44-401 *et seq.* (2007).

70.   Sysco and Gast used improper means to gain access to Shamrock's trade secrets when Gast, without Shamrock's express or implied consent, electronically transmitted 110 confidential and propriety documents containing Shamrock's trade secrets for purposes other than to serve Shamrock's interests, disclosed such trade secrets to Sysco, and impermissibly retained and used the trade secrets after Gast's resignation.

71.   Copying, disclosing and using such information by Sysco and Gast constitutes unauthorized copying, disclosure and/or use of trade secrets and confidential information in violation of the common law and in violation of Ariz.

Rev. Stat. §44-401 *et seq.* (2007).

72.     As a result of Sysco's and Gast's conduct, Shamrock has suffered and will continue to suffer substantial and irreparable harm, including lost profits, loss of goodwill, damage to the integrity of its confidential and proprietary information, and considerable expense for  various management employees, outside counsel and forensic consultants in pursuing its legal rights in this action.  In addition, because Sysco has been unjustly enriched and may continue to be unjustly enriched by virtue of Sysco's misappropriation of Shamrock's trade secrets, Shamrock is entitled to recover from Sysco all profits that Sysco has earned and may continue to earn as a result of its misappropriation, as well as injunctive relief and attorneys' fees.

COUNT THREE

*(Against Sysco and Gast for Conversion)*

73.     Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

74.     Sysco and Gast have converted property belonging to Shamrock without legal justification or privilege, including Shamrock's Confidential and Proprietary Information, with the intent to benefit Sysco and Gast.

75.     As a result of Sysco's and Gast's conduct, Shamrock has suffered and will continue to suffer substantial and irreparable harm, including lost profits, loss

of goodwill, damage to the integrity of its confidential and proprietary information, and considerable expense for various management employees, outside counsel and forensic consultants in pursuing its legal rights in this action.

## COUNT FOUR

### *(Against Gast for Breach of Confidentiality Agreement)*

76.    Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 75 as if fully set forth herein.

77.    As described above, Gast entered into a valid and enforceable Agreement with Shamrock on December 7, 2004. *See* Ex. A.

78.    By virtue of the foregoing conduct, Gast has violated the terms of the Agreement as follows:

a)    By breaching the duty of loyalty;

b)    By breaching the duty of confidentiality;

c)    By failing to return and surrender all Shamrock property and information; and

d)    By soliciting and recruiting Shamrock employees to terminate their employment with Shamrock.

79.    Gast's numerous breaches of the Agreement have harmed and threaten to further harm Shamrock's legitimate business interests, including, without limitation, its interest in protecting its confidential and proprietary

information, its interest in preserving its relationships and goodwill with customers and prospects, and its interests in protecting its relationships with its employees.

80.    As a result of Gast's conduct, Shamrock has suffered and will continue to suffer substantial and irreparable harm, including lost profits, loss of goodwill and considerable expense for various management employees, outside counsel and forensic consultants in pursuing its legal rights in this action.   In addition, Shamrock has lost one employee, and stands at risk of losing other employees, as well as customers, due to the wrongful conduct of Gast.  Shamrock is entitled to its reasonable attorneys' fees pursuant to the Agreement and Ariz. Rev. Stat. § 12-341.01 (2007) incurred in bringing this action.

COUNT FIVE

*(Against Gast and Sysco for Unjust Enrichment)*

81.    Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 80 as if fully set forth herein.

82.    By virtue of the foregoing conduct, Gast and Sysco have been and will be unjustly enriched at the expense of Shamrock.

83.    As a result of the foregoing conduct, Shamrock has suffered and will continue to suffer substantial and irreparable harm, including lost profits, loss of goodwill and damage to relationships with its customers, and considerable expense for various management employees, outside counsel and forensic consultants in

pursuing its legal rights in this action.

84.    It would be inequitable for Sysco and/or Gast to retain the benefits gained by their wrongful conduct without paying Shamrock the value of such benefits.

COUNT SIX

*(Against Sysco for Tortious Interference with Contract)*

85.    Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 84 as if fully set forth herein.

86.    Under the Agreement, Gast had a duty to inform any entity with whom he interviewed or otherwise discussed employment opportunities of the terms of the Agreement and its restrictions on his post-Shamrock employment activities.

87.    Upon information and belief, Sysco knew or should have known of Gast's duty of loyalty, duty of confidentiality, obligation to return Shamrock's materials and documents upon his termination, and duty not to solicit Shamrock employees.

88.    Upon information and belief, Sysco interfered with the Agreement between Shamrock and Gast, and the contractual obligations and duties that Gast owed to Shamrock despite Sysco's knowledge of the Agreement.

89.    Sysco's interference was intentional, malicious and without legal

justification, and was conducted by improper means and for an improper purpose.

90.   As a result of Sysco's conduct, Shamrock has suffered and will continue to suffer substantial and irreparable harm, and damages including lost profits, lost business opportunities, loss of goodwill, and considerable expense for various management employees, outside counsel and forensic consultants in pursuing its legal rights in this action.

## COUNT SEVEN

*(Against Sysco and Gast for Tortious Interference with Contract and*

*Prospective Business Relations)*

91.   Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 90 as if fully set forth herein.

92.   Sysco and Gast knew or should have known that Shamrock had existing contracts and advantageous business relations with a number of customers and prospective customers.

93.   Upon information and belief, Sysco and Gast have interfered with Shamrock's contracts and advantageous business relations with Shamrock's customers and prospects.  Such interference was intentional, malicious and without legal justification, and was conducted by improper means and for an improper purpose.

94.   As a result of Sysco's and Gast's conduct, Shamrock has suffered and

will continue to suffer serious and irreparable harm, damages including lost profits, loss of goodwill and lost opportunities to compete fairly for prospective business. In addition, Shamrock has incurred significant expense for various management employees, outside counsel and forensic consultants as a result of Sysco's and Gast's actions in pursuing its legal rights in this action.

### COUNT EIGHT

*(Against Gast for Violation of the Computer Fraud and Abuse Act,*

*18 U.S.C. § 1030(a)(2))*

95.    Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 94 as if fully set forth herein.

96.    On or about January 4, 2008 and January 7, 2008, Gast intentionally accessed a protected computer without authorization or exceeded his authorized access.

97.    Through the unauthorized access to his protected computer, Gast obtained Shamrock's confidential and proprietary information from the protected computer.

98.    In furtherance of his unauthorized access to his protected computer, Gast electronically transmitted Shamrock's confidential and proprietary information over the Internet to his personal, unprotected e-mail account without reason.

99.    Gast's conduct and computer transmissions involved an interstate communication.

100.    As a direct and proximate result of Gast's actions, Shamrock has suffered and will continue to suffer substantial and irreparable harm, and is entitled to compensatory damages and injunctive relief or other equitable relief, for its lost profits, lost goodwill and the time and resources spent and cost of hiring an expert to research and assess the unauthorized information and assets, transmitted from Shamrock's protected computer, all of which amount to a loss during a one year period of at least $5,000.00.

COUNT NINE

*(Against Gast for Violation of the Computer Fraud and Abuse Act,*

*18 U.S.C. § 1030(a)(4))*

101.    Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 100 as if fully set forth herein.

102.    On or about January 4, 2008 and January 7, 2008, Gast knowingly and with intent to defraud accessed a protected computer without authorization or exceeded his authorized access.

103.    Through the unauthorized access to his protected computer, Gast furthered the intended fraud and obtained value of more than $5,000.00, including Shamrock's confidential and proprietary information from the protected computer.

104.   As a direct and proximate result of Gast's actions, Shamrock has suffered and will continue to suffer substantial and irreparable harm, and is entitled to compensatory damages and injunctive relief or other equitable relief, for its lost profits, lost goodwill and the time and resources spent and cost of hiring an expert to research and assess the unauthorized information and assets, transmitted from Shamrock's protected computer, all of which amount to a loss during a one year period of at least $5,000.00.

COUNT TEN

*(Against Gast for Violation of the Computer Fraud and Abuse Act,*

*18 U.S.C. § 1030(a)(5)(iii))*

105.   Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 104 as if fully set forth herein.

106.   On or about January 4, 2008 and January 7, 2008, Gast intentionally accessed a protected computer without authorization.

107.   Upon information and belief, through the unauthorized access to his protected computer, Gast caused damage to Shamrock by accessing, retaining and deleting data and information from Shamrock's protected computer, and by disclosing the data and information to Sysco.

108.   As a direct and proximate result of Gast's actions, Shamrock has suffered and will continue to suffer substantial and irreparable harm, and is entitled

to compensatory damages and injunctive relief or other equitable relief, for its lost profits, lost goodwill and the time and resources spent and cost of hiring an expert to research and assess the unauthorized information and assets, transmitted from Shamrock's protected computer, all of which amount to a loss during a one year period of at least $5,000.00.

## COUNT ELEVEN

*(Against Sysco and Gast for Constructive Trust)*

109.   Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 108 as if fully set forth herein.

110.   By their conduct as described above, Gast and Sysco have misappropriated valuable corporate opportunities belonging to Shamrock.  Unless they are prevented from doing so, Gast and Sysco will continue to enjoy and be unjustly enriched by the unlawful diversion of such corporate opportunities.

111.   Any and all funds, accounts, revenues and receivables of Gast and Sysco, whether in existence or after acquired, obtained in whole or part as a result of any information provided by Gast, and any assets acquired with such monies, will have been acquired through wrongful conduct and contrary to equitable principles.  All title and right to such funds, accounts, revenues, receivables and related assets properly belong to Shamrock, since they were derived by Gast and Sysco from their misappropriation of Shamrock's corporate opportunities and

confidential information and/or interference with Shamrock's prospective business relations.

COUNT TWELVE

*(Against Sysco and Gast for Unfair Competition)*

112.   Shamrock adopts and incorporates by reference the allegations in paragraphs 1 through 111 as if fully set forth herein.

113.   Sysco and/or Gast acquired by improper or unauthorized means what they knew or should have known was Shamrock's confidential and proprietary information and trade secrets.

114.   Upon information and belief, Sysco and/or Gast have used and will continue to use the confidential and proprietary information and trade secrets of Shamrock in direct competition with Shamrock.

115.   Sysco's and Gast's use of the confidential and proprietary information and trade secrets of Shamrock occurred and will continue to occur despite Sysco's and Gast's knowledge that such information is confidential and was acquired through improper means, and in violation of the terms of the Agreement.

116.   As a result of the foregoing actions of Sysco and Gast, Shamrock has suffered and will continue to suffer damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Shamrock respectfully requests the following

- 26 -

interlocutory and final relief:

(a)    an order temporarily, preliminarily and permanently enjoining Sysco and Gast from using, copying, disseminating, retaining, disclosing or providing access to any information, documents, pricing or financial information or other confidential files, data or materials that Sysco and/or Gast obtained without Shamrock's authorization or consent and requiring the return to Shamrock of all misappropriated trade secrets and Confidential and Proprietary Information;

(b)    an order temporarily, preliminarily and permanently enjoining Gast from, directly or indirectly, recruiting for employment or inducing to terminate his or her employment with Shamrock any person who currently employed by Shamrock for a period of twenty-four (24) months;

(c)    an order imposing a constructive trust, for the benefit of Shamrock, on all proceeds paid to or on behalf of Sysco and/or Gast arising out of their misappropriation of Shamrock's trade secrets and Confidential and Proprietary Information;

(d)    an order appointing an accountant or special master to account for all proceeds and expenses or revenues that Sysco received or receives by virtue of its misappropriation of Shamrock's trade secrets and Confidential and Proprietary Information or interference with Shamrock's contracts or prospective business relations, and compelling payment to Shamrock of all such profits that Sysco has received or receives;

(e)    an award to Shamrock of compensatory and statutory damages, including lost profits, lost goodwill, and interference with employees and customers;

(f)    an award to Shamrock of punitive damages;

(g)    an award to Shamrock of its costs and expenses, including costs of hiring an expert to research and assess the unauthorized information and assets transmitted from Shamrock's protected computer and reasonable attorney's fees under the Agreement and Ariz. Rev. Stat. § 12-341.01 (2007) incurred in bringing this action;

(h)    an order and judgment awarding to Shamrock all other relief to which it is entitled in law or equity.

DATED this 3[th] day of February, 2008

s/ Kara M. Maciel
Marty Clare
CAMPBELL, YOST, CLARE & NORELL
101 North First Avenue, Suite 2500
Phoenix, Arizona  85003
Telephone: (602) 322-1600
Facsimile:  (602) 252-4431


Kara M. Maciel
Mark M. Trapp
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
Telephone: (202) 861-0900
Facsimile:  (202) 296-2882

## VERIFICATION

I, Dan Carroll, verify and declare under 28 U.S.C. §1746 that:

1. I am the General Manager of Arizona Foods at Shamrock Foods Company.
2. I have read the foregoing Verified Complaint and it is, based on my personal knowledge, true.

I verify and declare under penalty of perjury that the foregoing statements are true and correct.

_Dan Carroll_
Dan Carroll

Dated: February 1, 2008